```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

BRIAN TOVAL                                         CIVIL ACTION

VERSUS                                              NO: 13-5848

CHILDREN'S HOSPITAL                                 SECTION:
                                                    J(2)
```

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 19)** filed by Defendant, Children's Hospital ("Children's"), as well as an *Opposition* **(Rec. Doc. 28)** by Plaintiff, Brian Toval ("Plaintiff"), and Children's *Reply* (**Rec. Doc. 34)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

This matter arises out of an Equal Employment Opportunity Commission ("EEOC") Claim filed by Plaintiff against Children's, his previous employer. Plaintiff, an African American male, began his career at Children's Hospital in 1991 as a medical technologist. In 1999, Plaintiff became a systems analyst in the Information Technology (IT) department, and was promoted to Senior Systems Analyst in 2002, which was the position he held until his resignation in August, 2011. In 2006, Annette Perilloux

1

("Perilloux"), a Caucasian woman, was promoted to project manager and began serving as Plaintiff's direct supervisor. In June, 2008, Plaintiff presented a number of grievances to his second line supervisor, Tammy Reites ("Reites"), also a Caucasian woman. A meeting was held, in which Perilloux was also present, where Plaintiff aired a number of complaints with his supervisors. Plaintiff has not provided the Court with specifics regarding these complaints.

In August, 2010, Plaintiff informed Perilloux that he wanted to apply for the supervisory position of Program Team Lead. Plaintiff alleges that Perilloux informed him that the position did not yet exist. Yet, on November 9, 2010, Perilloux announced that the Project Team Lead position had been filled by Rhonda Zimmer ("Zimmer"), a Caucasian woman who worked with Plaintiff as a senior analyst. This promotion was granted to Zimmer without any interview or announcements to other analysts regarding openings for the position. On November 11, 2010, two days after Zimmer's promotion, Plaintiff filed a grievance with Doug Mittelstaedt ("Mittelstaedt") in the Human Resources Department of the hospital, claiming that he had been denied promotion to the Project Team Lead position as a result of his race. After conducting an investigation, and consulting with both Perilloux and Reites, Mittelstaedt provided Plaintiff with a detailed memorandum in which he defended the decision to promote Zimmer, rather than Plaintiff, to the Project

Team Lead position. Plaintiff responded to Mittelstaedt, stating that he had to conclude that the reason why he was not promoted to the position was because he is a "Black man." (Rec. Doc. 28-1, p. 5).

Plaintiff further alleges that after he filed his grievance with Mittelstaedt, Plaintiff endured "prolonged and intense retaliation" in the form of public humiliation, heavy work loads, and excessive scrutiny of his work by Zimmer. In June, 2011, Plaintiff began seeing several physicians for anxiety and depression. Plaintiff alleges that his doctors advised him to take medical leave and resign from his job at Children's, which he did. Also in June, 2011 prior to his resignation, Plaintiff filed a Charge of Discrimination with the Equal Employment Office, asserting that he was discriminated against by Children's through: (1) a discriminatory failure to promote and (2) a retaliatory failure to promote.[1] In November, 2011 Plaintiff amended this

---

[1] Plaintiff's EEOC Charge reads as follows:

I. I began employment with Respondent as a Medical Technologist on January 15, 1991. Later I became a Senior Systems Analyst. On June 9, 2008, I complained about unequal treatment in promotional opportunities through a grievance to Tammy Reites (White) to no avail. In 2010, I became aware of an expressed interest in the Project Lead position for which I qualify. On or about November 9, 2010, this position was given to [Rhonda Zimmer] (White) without being posted.

II. Respondent failed to provide me with adequate reasons for denying me the opportunity to apply for the position.

III. I believe that Respondent has violated Title VII of the Civil Rights Act of 1964, as amended, by denying me a promotional opportunity in retaliation for complaining about protected activity based on my race (Black).

3

charge to include claims of retaliation based on his complaint of discrimination in November, 2010, and the filing of his EEOC charge.[2] Plaintiff then filed a complaint against Children's in this Court on September 17, 2013, seeking damages for the claims asserted in his EEOC charge and the subsequent amendment. Children's then filed the instant motion, seeking summary judgment in its favor and dismissal of all of Plaintiff's claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no material issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *See also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide*

---

(Rec. Doc. 28-20).

[2] Plaintiff's letter of amendment to the EEOC specifically provides in part:

"I want you to know that, in no uncertain terms, I want to pursue my case against Children's Hospital for discrimination, retaliation against me for filing a grievance with the hospital and with the EEOC, and for harassing me to the point that I needed to take medical leave."

(Rec. Doc. 28-23).

4

*Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a

5

material issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a material issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Claims Before the Court

The parties first dispute the types of claims properly before the Court. Children's argues that this Court may hear only the two claims contained in the Complaint: (1) discriminatory failure to promote in November 2010; and (2) retaliatory failure to promote in November 2010 (as a result of Plaintiff's complaint to Reites made in 2008).[3] (Rec. Doc. 19-2, p. 6-7). In addition to these claims, Plaintiff also asserts that the Court should hear his claims regarding Children's alleged retaliation for Plaintiff's complaint of discrimination in 2010 and his filing of his EEOC charge in 2011.[4] (Rec. Doc. 28, p. 22). Children's disputes that these particular retaliation claims are properly before the Court, arguing that Plaintiff failed to exhaust his administrative

---

[3] Children's also notes that Plaintiff has raised a number of other claims he wishes to bring against Children's during his deposition including a claim for constructive discharge, which Children's asserts are time-barred, and are not proper to be heard by the Court in this matter. Because Plaintiff does not dispute this contention and does not seek to have these claims heard before the Court, the Court finds it unnecessary to address this argument.

[4] When listing the claims that are properly before the Court in his Opposition memorandum, Plaintiff fails to note the retaliatory failure to promote claim, however, considering the language of Plaintiff's original EEOC charge, the Court finds this claim is properly before the Court.

remedies regarding these claims, which precludes this Court from considering them. (Rec. Doc. 19-2, p. 6-7). Plaintiff, in response, contends that these retaliation claims are sufficiently related to the original claims included in his EEOC charge, so as to "relate back" to the original charge. As such, Plaintiff asserts that he sufficiently exhausted his administrative remedies regarding these particular claims, making them proper before this Court.

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. U.S.*, 916 F.2d 245, 247-48 (5th Cir. 1990)). In order to sufficiently exhaust their administrative remedies, aggrieved employees must file an EEOC charge of discrimination with their respective Equal Employment Office, detailing the complaints of the alleged discriminatory behavior they intend to investigate and ultimately litigate. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). The scope of this exhaustion requirement has been determined in light of two competing policies underlying Title VII. *Id.* First, the Fifth Circuit has noted that Title VII was intended for the "unlettered or unsophisticated employee," and a limitation of judicial relief to those claims that comply with "technical niceties" would conflict with this purpose of Title VII. *Id.*; *See Sanchez v.*

*Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). However, this policy is to be balanced against a primary purpose of Title VII which is to "trigger the investigatory and conciliatory procedures of the EEOC in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89; *Sanchez*, 431 F.2d at 466. In light of these competing policies, the scope of a civil action encompasses not simply those complaints included in the EEOC charge, but "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450 (5th Cir. 1983)(citing *Gamble v. Birmingham S. R.R. Co.*, 514 F.2d 678, 689 (5th Cir. 1975); *Sanchez*, 431 F.2d at 466).

In line with this policy, EEOC regulations permit claimants to amend their original EEOC charges in order to cure defects or to "clarify and amplify" their original allegations. FTC Credit Practices Rule, 29 C.F.R. § 1601.12 (2014). When such an amendment alleges additional acts which grow out of or relate to the subject matter of the original charge, the amendments will "relate back to the date the charge was first received," causing the amendment to be considered timely and administratively exhausted even if filed

8

after the statute of limitations has run.[5] 29 C.F.R. § 1601.12.

Here, the two discriminatory acts alleged in Plaintiff's original EEOC charge, filed in June 13, 2011, directly concern the promotion of Rhonda Zimmer, rather than Plaintiff, to the Project Lead position. The two complaints included in this original EEOC charge were: (1) alleged discrimination by Children's in failing to promote Plaintiff to the Project Team Lead position, and (2) alleged retaliation by refusing to promote Plaintiff to this position as a result of his previously filing a grievance with his supervisor, Tammy Reites, in 2008. (Rec. Doc. 28-20). Plaintiff's amendment to this charge, filed four months later, on November 9, 2011, sought to supplement his original EEOC charge with two separate complaints for retaliation based on a complaint of discrimination made in 2010 as well as his filing of the EEOC charge in June, 2011. (Rec. Doc. 28-23). Contrary to Plaintiff's allegations, the Court finds that these amended claims for retaliation do not properly relate back to his original EEOC charge.

Plaintiff's amendment seeks to include two entirely new claims for retaliation, based largely on new facts which occurred after the original EEOC charge was filed. Plaintiff contends that both the amended complaint and the complaints included in the EEOC

---

[5] Louisiana, as a deferral state, requires that a plaintiff file an EEOC charge and institute proceedings with a state agency within 300 days of the alleged unlawful employment practice. *Conner v. La Dept. of Health and Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

claims originate from "essentially the same" facts. (Rec. Doc. 28, p. 21). The Court finds that this is not the case. Plaintiff's complaints contained in the original EEOC charge concern only conduct of Plaintiff's supervisors in November, 2010, the date when Plaintiff was denied promotion to the Project Team Lead position. Specifically. the EEOC charge, despite being filed in June, 2011 makes no reference to alleged retaliation incurred by Plaintiff as a result of his complaint filed with Middelstaedt in November 2010. However, Plaintiff's amended complaint, including entirely new claims of retaliation, concern only those events that occurred *after* he was denied the promotion. When an amendment acts as an "addition" rather than a true "amendment," by adding a separate claim based on facts which are independent of the allegations contained in the original EEOC charge, the "amendment" does not properly relate back to the original charge. *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985); *See also Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) ("Generally amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination.").[6] Plaintiff's amendment, like that in *Hornsby*, should be more properly labeled as

---

[6]Plaintiff has misinterpreted the holding of the Fifth Circuit in *Hornsby*, stating that the Court found that the claimant's amendment asserting claims of gender discrimination properly related back to her original EEOC charge which asserted claims of racial discrimination. (Rec. Doc. 28, p. 21). However, the Fifth Circuit clearly held that,"[because Hornsby] added a charge, and facts as well, that are independent of the allegations in her first compliant . . . the amended complaint does not properly relate back to the original." *Hornsby*, 777 F.2d at 247.

an addition to his EEOC charge, in that it alleges two entirely new causes of action which rely on facts distinguishable from those included in his original charge. As such, the claims of retaliation asserted in Plaintiff's amendment do not properly relate back to his original EEOC charge and fall outside the scope of Plaintiff's civil action.[7]

Because Plaintiff's claims for retaliation based on his complaint of discrimination in 2010 and the filing of his EEOC charge were never thoroughly investigated by the EEOC, as envisaged by Title VII, the Court finds that Plaintiff failed to exhaust his administrative remedies in this regard, and the Court does not have jurisdiction to hear these claims. As such, the only two claims that are properly before this Court are those contained in Plaintiff's EEOC charge for discriminatory failure to promote and retaliatory failure to promote.

**B. Discriminatory Failure to Promote Claim**

Plaintiff first claims that Children's discriminated against him by failing to promote him to the position of Project Team Lead in November, 2011 and instead promoting Zimmer, a Caucasian employee whom Plaintiff contends was significantly less qualified. In order to survive summary judgment on a Title VII claim for

---

[7] Because Plaintiff's claims of retaliation contained in his amendment do not sufficiently relate back to his EEOC charge and fall outside the scope of his civil action, it is unnecessary for the Court to address Children's argument regarding whether the amendment lacks proper administrative requirements. (Rec. Doc. 34, p. 3).

discrimination, a plaintiff must first present evidence of a prima facie case of discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Once this prima facie case is established, the burden then switches to the employer to "articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Id.* If the defendant satisfies this burden, the presumption of discrimination "disappears," and the burden again switches to the plaintiff to show that the reason given by the employer for the employment action was mere pretext for racial discrimination. *Id. (*citing *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 425 (5th Cir. 2000)). Despite the numerous instances of apparent burden-shifting, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In order for Plaintiff to satisfy his burden of establishing a prima facie case of discriminatory failure to promote, he is required to show: (1) that he belongs to a racial minority or a protected class; (2) that he was qualified for the position sought; (3) that he was rejected for the position; and (4) that the employer promoted an applicant outside of the protected class. *McDonald v. Entergy Operations, Inc.*, 75 F. App'x 279, 280 (5th Cir. 2003); *Davis*, 383 F.3d at 317. The only element in dispute by

the parties is whether Plaintiff was actually qualified for the position of Project Team Lead.

At the prima facie stage of his case, a plaintiff must show that he meets "objective promotion criteria" in order to show he is qualified for the position sought. *Oden v. Oktibbeha Cnty, Miss.*, 246 F.3d 458, 469 (5th Cir. 2001). The Project Team Lead position, as indicated by its job description, requires both extensive knowledge in IT as well as significant managerial skill, including duties to manage the entire analytics staff and communicate through varying levels of supervision. (Rec. Doc. 28-25, p. 1). Plaintiff contends that he was undoubtedly qualified for the position, as he had been working as an analyst in the IT department with Children's since 1999 and had received good reviews from his superiors during this time. It is undisputed by the parties that Plaintiff was skilled as an analyst and possessed sufficient qualifications in IT. What is in dispute, however, is Plaintiff's managerial skills and his ability to communicate and lead others.

In seeking to carry his burden in showing that he was qualified for the position of Project Team Lead, Plaintiff relies heavily on his previous performance reviews, which Plaintiff contends are extremely successful. Throughout his years as an analyst (from 1998 to 2010), the performance reviews depict Plaintiff as a successful and hard-working senior analyst, with good team skills, going so far as to describe him as a "team

player."(*See* Rec. Docs. 28-4, 28-6, 28-7, 28-8, 28-9). Perilloux's deposition also reflects this, noting that when a computer virus attacked the hospital's computer system, Plaintiff "stayed and helped until we were able to get it under control." (Rec. Doc. 28-5, p. 14). However, these reviews are in direct conflict with the subsequent deposition testimony of Plaintiffs' supervisors, who have testified that Plaintiff repeatedly had problems communicating with other employees and departments within the hospital and failed to successfully manage the small projects he was put in charge of within the IT department. (Rec. Doc. 19-12, p. 6; Rec. Doc. 19-13, p. 2). As such, the Court finds that genuine issues remain regarding whether Plaintiff had sufficient managerial skills for the Project Team Lead position and whether he satisfied his prima facie case of discrimination.

Even if Plaintiff is able to present a prima facie case of discrimination, the Court must next consider whether Children's has provided a legitimate, nondiscriminatory reason for its failure to promote Plaintiff to the position of Project Team Lead, despite his apparent qualifications. Children's may satisfy this burden by "producing evidence, which 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Children's contends that its decision to promote

14

Zimmer rather than Plaintiff was not based in discrimination, but was made simply because "she was determined to be the most qualified person for the job." (Rec. Doc. 19-2, p. 15).

Zimmer has been employed by Children's for twenty-four (24) years, initially working in the Human Resources Department of the hospital before transferring to work in the IT department as a systems analyst in 2004. (Rec. Doc. 28-14, p. 2,7). Additionally, Zimmer received a bachelor's degree in business management. (Rec. Doc. 28-14, p. 4). Both Zimmer's education as well as her extensive experience in Human Resources are reflective of the management skills required in the Project Team Lead position. Additionally, Perilloux noted in her deposition that Zimmer had led one of the biggest portions of the "Invision Project" within the IT department in 2007, and also that she acted in a management role for all human resources aspects of IT projects during her time employed with the Human Resources department. (Rec. Doc. 28-5, p. 19). Moreover, although Zimmer did not receive education in IT, her performance within the department led to her promotion to the position of Senior Analyst within only a few years of her transfer, which is clearly reflective of her IT skill. While it appears as though Plaintiff may have more extensive education and experience in the realm of IT, he has no education or experience regarding management. As such, the Court finds that Children's decision to hire Zimmer based on her superior qualifications, considering both

15

her experience in management and IT, is a legitimate, non-discriminatory reason.

Because Children's has presented a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff, Plaintiff must now be given a "'full and fair opportunity to demonstrate' that [Children's] proffered reason is not true, but instead is a pretext for intentional discrimination." *Price*, 283 F.3d at 720 (citing *Hicks*, 509 U.S. at 507-8). In order to satisfy his burden, Plaintiff must produce "substantial evidence" of pretext to rebut any legitimate, non-discriminatory reason set forth by Children's. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citing *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-403 (5th Cir. 2001)). Plaintiff may establish pretext either by showing that a "discriminatory motive more likely" motivated Children's decision or that Children's explanation is "unworthy of credence." *Wallace*, 271 F.3d at 220 (citing *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998)).

The Court finds that in the summary judgment stage, Plaintiff has failed to show that Children's reason for refusing to promote him to Project Team Lead is mere pretext. Plaintiff first contends that he was "objectively the better qualified candidate," and repeatedly attempts to undermine Zimmer's qualifications, stating that she has "no IT education and only 7 years total experience."

16

(Rec. Doc. 28, p. 24). However, the Court finds these attempts unpersuasive. Plaintiff fails to note that Zimmer has worked for Children's for twenty-four (24) years, making her extremely knowledgeable regarding the procedures of the hospital. Moreover, and more importantly, Zimmer has extensive experience and education in management, one of the critical criteria for the Project Team Lead position. Plaintiff has presented no evidence to show that he has any substantial experience or education in management, and instead, Children's has presented evidence to show that he has encountered issues in the small management projects he was awarded within the IT department.[8] In attempting to prove pretext, Plaintiff also makes note that Children's failed to follow their written policy of filling open positions, which required the hospital to post all open positions on a bulletin board located outside the Human Resources department. (Rec. Doc. 28-12, p. 2). However, as admitted by Plaintiff, this policy was enacted in the 1980s and has not been substantially revised since. In fact, Plaintiff admits that Children's completely abandoned this practice in 2007. (Rec. Doc. 28-1, p.2). Plaintiff has failed to present any evidence that Children's conduct in hiring Zimmer without a posting

---

[8] A declaration by Perilloux states that on a number of instances, Plaintiff failed to take direction, had repeated communication issues with other individuals and departments within the hospital, and did not successfully manage the small projects that he was put in charge of within the IT department. (Rec. Doc. 19-12, p. 6). Moreover, Reites also noted in her declaration that Plaintiff worked slowly, failed to meet deadlines, and was not flexible or receptive of change. (Rec. Doc. 19-13, p. 2).

17

or interview violated the hospital's current policy on job openings. Because Plaintiff has failed to proffer evidence to objectively show that he was better qualified for the position of Project Team Lead than Zimmer or that Children's violated its policy of posting open positions in hiring Zimmer, the Court finds that he has not carried his burden to prove that Children's purported non-discriminatory reason was mere pretext.

Assuming that Plaintiff has presented a prima facie case of discrimination, he has failed to rebut Children's legitimate, non-discriminatory purpose of declining to promote Plaintiff as a less-qualified candidate, and as such, no material issue remains that Plaintiff's claim for discriminatory failure to promote must fail.

### C. Retaliatory Failure to Promote Claim

Plaintiff also claims that Children's refused to promote him to the Team Lead Position as retaliation for his act of complaining to Reites in 2008 regarding alleged unequal treatment based on his race. In order to establish a prima facie case of retaliation, a plaintiff in a Title VII action must show that: (1) he engaged in a statutorily protected activity; (2) his employer took adverse employment action against him; and (3) the protected activity and the adverse action are causally linked. *Smith v. Harvey*, 265 F.App'x 197, 201 (5th Cir. 2008) (citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005)).

The Court finds that Plaintiff has failed to present a prima

facie case of retaliation. Specifically, Plaintiff has failed to prove any type of causation between the allegedly adverse act of refusing to promote him and Plaintiff's 2008 complaint to Reites. A "but for" standard is required in order to prove causation, requiring the plaintiff to show that the employer's adverse action would not have been taken but for plaintiff's alleged protected activity. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). In order to satisfy this burden, the plaintiff must present either direct evidence of retaliation or "circumstantial evidence creating a rebuttable presumption of retaliation." *Calmes v. JP Morgan Chase Bank*, 943 F.Supp.2d 666, 684 (E.D. La. 2013) (Barbier, J.) (quoting *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007)). Plaintiff has failed to present any evidence, either direct or circumstantial, to support his allegation that Children's failure to promote was a result of his previous complaint to his supervisor. In his Opposition, Plaintiff addresses only his claims of retaliation based on the filing of his EEOC charge and the complaint made to Human Resources in November, 2010, which, as addressed above, are not properly before this Court. Mention of his retaliation claim based on his 2008 complaint is made only in passing, and no evidence is provided to support his allegations that adverse action was taken against him or that this action was causally linked to his prior complaint. (Rec. Doc. 28, p. 25-26).

Because there is no material issue that Plaintiff has failed

to establish a prima facie case of retaliation, summary judgment in favor of Children's regarding this claim is proper.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 38)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Children's are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 27th day of October, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE